# SAUNOA S. VAOULI, SUAFA`I P. SATELE, UTU SINAGEGE, and FAUTUA L.T. FAUMUINA, Appellants

v.

# A.P. LUTALI, Appellee

## In the Matter of the Matai Title "FAUMUINA"

High Court of American Samoa
Appellate Division

AP No. 7-92

April 4, 1994

Before RICHMOND, Associate Justice, CANBY,* Acting Associate Justice, MUNSON,** Acting Associate Justice, VAIVAO, Associate Judge, and BETHAM, Associate Judge.

Counsel: For Appellant Saunoa S. Vaouli, Gata E. Gurr
For Appellant Suafai P. Satele, Asaua Fuimaono
For Appellee A.P. Lutali, Tauivi Tuinei

Opinion:

For 20 years various candidates have been legally pursuing the Faumuina title. This appeal is the latest chapter in a case that will be, we fear, ongoing. Most recently, the case was heard before this court's Land and Titles Division on March 18, 1992. The trial court, in a very brief decision, awarded the title to appellee A. P. Lutali.[1] For the reasons detailed below, we must remand for a new trial.

## INSUFFICIENT FINDINGS ON CLAN PREFERENCE

Both appellants pursuing this appeal, Saunoa S. Vaouli and Saufa`i P. Satele, assert that the trial court erred in law by failing to comply with all provisions of A.S.C.A. § 1.0409. The relevant part of that section reads:

> (c)   In the trial of title cases, the High Court shall be guided by the following considerations, in the priority listed:
>
> * * *
>
> (2) the wish of the majority or plurality of those clans of the family as customary in that family;
>
> * * *
>
> (d)   The court shall issue a written decision that must contain findings of fact and conclusions of law on each issue under (c) above.

In addressing A.S.C.A. § 1.0409(c)(2), the trial court stated: "None of the

---

\* The Honorable William C. Canby, Jr., Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

\*\* The Honorable Alex R. Munson, Chief Judge, United States District Court for the Northern Mariana Islands, serving by designation of the Secretary of the Interior.

[1] That decision, dated April 23, 1992, also contained a dissent. However, our grounds for remand are not related to the reasons for that dissent.

claimants were supported by a majority of the clans of the Faumuina family" (Opinion and Order at 2). Nowhere in the trial court's decision was a finding made on the make-up or number of clans in the Faumuina family. In fact, the only other reference to clans is found in the conclusion, where the court, *citing In re Matai Title "Galea`i"*, LT No. 1050 slip op. at 3 (1971), states: "[W]hen claimants are closely matched, it is conducive to family harmony to make the selection from a different clan than the clan which last held the title." Yet the court never indicated which clan candidate Lutali, or indeed any former title-holder, represents.

■ We note that the language of A.S.C.A. § 1.0409(d) is clear-- the trial court <u>shall</u> issue a decision that covers each factor enumerated in A.S.C.A. § 1.0409(c). We note that use of the word "shall" has traditionally been interpreted as a mandatory direction, inconsistent with the idea of discretion. *Hill v. United States I.N.S.*, 714 F.2d 1470 (9th. Cir 1983); *In Re Thrift Shoe Co., Inc.*, 502 F.2d 1211 (9th Cir. 1974); *United States v. Machado*, 306 F. Supp. 995 (N.D.Cal. 1969).

■ Absent any clearly expressed legislative intention to the contrary, "shall" has been found to be significantly commanding. *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935) ("shall ... is the language of command, a test significant, though not controlling); *MCI Telecommunications Corp. v. F.C.C.*, 765 F.2d 1186, 1191 (D.C.Cir. 1985) (courts ordinarily regard such statutory language as "shall" as conclusive). In *Woodrum v. Donovan*, 544 F. Supp. 202, 206 (Ct. of Int'l. Trade 1982), the court noted under what circumstances a statute's procedural directive might be considered to be mandatory. Citing *French v. Edwards*, 80 U.S. 506 (1872), the court said: "(W)hen the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory". In this case, it is clear that a failure to follow the clear meaning of A.S.C.A. § 1.0409(d) results in prejudice to all involved, as substantive rights are clearly at issue. The legislature has required that the judiciary issue written findings of fact and conclusions of law. The trial court has no discretion to ignore that legislative mandate.

The court's obligation to render a decision on each of the four considerations has also been found to be mandatory by this court. In *In re Matai Title "Gaoteote"*, AP No. 103-75 (1975), the court found that failure to enter a finding on what the clans of a family are and who they support was an error of law. The court stated:

3

> The Fono has determined that only a serious review of
> the claimants in light of each of the four factors can
> result in an informed selection by the court. . . .
> Naturally, the trial judges must determine what the clans
> of the family are before they can be guided by the desire
> of the majority or plurality of those clans (citation
> omitted). It makes no difference that this determination
> is difficult; it is the function of the Court to resolve
> difficult questions.

The *Gaoteote* case is directly on point.[2] While we acknowledge the often-difficult task of determining clans and whom they support,[3] we are precluded by law from allowing the decision below to stand, since the trial court failed to make the required findings. Because the trial court did not make a finding on the number, identity and preference of the clans in the Faumuina family, the decision cannot stand.

## APPEARANCE OF JUDICIAL IMPARTIALITY

We perceive a second problem with the trial court's decision. At the onset of trial, a motion was made to disqualify two of the associate judges that had been appointed by appellee A.P. Lutali in his capacity as the Governor of American Samoa. That motion was denied. The issue was reasserted, and again rejected, at the hearing on the motion for reconsideration or new trial. We feel this issue merits further consideration.

In the federal courts, the method for raising the issue of a judge's possible bias or prejudice and the grounds for disqualification are set out in 28 U.S.C. §§ 144 and 455, respectively. Section 144 allows a party to file an affidavit raising the issue of a judge's possible personal bias or prejudice against the party, and the steps to be taken once such an affidavit has been filed. Section 455, revised in 1974, reads, in pertinent part: "(a) Any justice, judge ... of the United States shall disqualify himself in any

---

[2] We point out that 19 years have passed since the decision in the *Gaoteote* case was issued. If the legislature disagreed with the reasoning therein, it has had ample time to clarify A.S.C.A. § 1.0409. Its silence on this matter is yet another indication of the mandatory nature of the provision.

[3] *See In re Matai Title "Tauala"*, 14 A.S.R.2d 83 (1990).

proceeding in which his impartiality might reasonably be questioned".[4] Section 455(a) focuses not on whether or not there is actual prejudice, but on whether or not there is an appearance of partiality. *United States v. Ritter*, 540 F.2d 459, 462 (10th Cir. 1976) (disqualification is appropriate under section 455(a) when the circumstances are such that the judge's impartiality might be reasonably questioned); *Rice v. McKenzie*, 581 F.2d 1114, 1116 (4th Cir. 1978) (the question is not whether the judge is impartial in fact, it is whether another might reasonably question his impartiality in the circumstances). This standard has been interpreted by reference to the reasonable person. *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977); *Pepsico, Inc. v. McMillen,* 764 F.2d 458, 460 (7th Cir. 1985) (the test for appearance of partiality is whether a disinterested observer would entertain significant doubt that justice would be done).

The appearance of partiality is also a matter of concern in the territory. American Samoa's High Court Rule 103 reads, in pertinent part: "The conduct of all judges shall be governed by the Canons of Judicial Ethics". Canon 2 states: "A Judge should avoid impropriety and the appearance of impropriety in all his activities" (emphasis added). Canon 3 states: "A Judge should perform the duties of his office impartially and diligently". Canon 3C(1) states: "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . ."

A.S.C.A. § 3.1007(a) reads:

> (a) No judge shall sit in any case in which he, or a family of which he is a member, has a substantial interest, or in which he has been counsel,is or has been a material witness, or is a member of the same family with any party to the case.

We interpret the words of A.S.C.A. § 3.1007(a) "a case in which he ... has a substantial interest" not to mean only that such a judge is actually biased in the case at issue, but also that such an interest may appear to exist. A lack of the legitimate appearance of impartiality is as threatening to smooth judicial functioning here as elsewhere. We interpret the words of A.S.C.A. § 3.1007(a) "a case in which he ... has a

---

[4] The 1974 revision of section 455 was based on the "appearance of justice" standard adopted by the House of Delegates of the American Bar Association in 1972. *See SCA Services, Inc. v. Morgan*, 557 F.2d 110, 113 (7th Cir. 1977) (citations omitted).

substantial interest" not to mean only that such a judge is actually biased in the case at issue, but also that such an interest may appear to exist. A lack of the legitimate appearance of impartiality is as threatening to smooth judicial functioning here as elsewhere. *Meredith v. Atualevao*, AP No. 06-79 (1979) (the appearance of impartiality is an operative standard as much as the fact of impartiality; it is irrelevant whether a judge was in fact impartial or whether actual prejudice was shown); *In re Matai Title "Tauala"*, 15 A.S.R.2d 65, 66 (1990) (disqualification may, in other cases, be appropriate to avoid the appearance of impropriety). Recusal should never be undertaken lightly, but there are certain instances in which recusal is proper. We think that this is one of those times.[5]

■ The standard of review is, in accordance with A.S.C.A. § 43.0801(b), "clearly erroneous". Federal courts also apply the clearly erroneous standard to such issues. *See Laxalt v. McClatchy*, 602 F. Supp. 214, 217 (D. Nev. 1985) (citations omitted).

■ A judge has an obligation not to recuse himself or herself unless there is a need to do so. *Pene v. American Samoa Power Authority*, 10 A.S.R.2d 23 (mem.)(1989); *see also Uiagalelei v. Ulufale*, 17 A.S.R.2d 158 (1990). If recusals were easily obtained, parties might use them as a means of "judge-shopping." *Ouachita Nat. Bank v. Tosco Corp.*, 686 F.2d 1291, 1300 (8th Cir. 1982) ("Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice," *citing Blizard v. Fielding*, 454 F. Supp. 318, 320 (D. Mass. 1978)).

The two associate judges in question were appointed to the bench by appellee A.P. Lutali during his first term as the Governor. While we do not wish to say that a governor, having appointed an associate judge, may never come before that individual in court, there are instances when this is so. We think that when a governor is before the court in his or her official capacity, the chance of any appearance of partiality is slim, and there is, absent special circumstances, no reason for an associate judge to

---

[5] We take notice of the fact that when this court was called upon to select a successor to the Faumuina title in 1973, there were also questions regarding the composition of the original panel assigned to the trial. At that time, the entire panel recused itself and "The Chief Justice then collected a pool of all the names of permanent, temporary, and retired associate judges, and submitted those names to the parties...". The names that remained then proceeded to sit at trial. *In re Matai Title "Faumuina"*, LT No. 1265-72 (1973).

have to recuse themself.[6]

■ However, when an appointing governor appears in his capacity as an individual citizen before an appointee judge, it is even more important that the appearance of partiality be avoided. Particularly in a small community where most people know one another, it is critically important for the courts to avoid the appearance of favoritism to a party. The appearance of partiality can be as corrosive to the judiciary as actual partiality; the courts must always maintain absolute independence and integrity.[7] Under the particular facts and circumstances of the case before us: its history, the title at stake and the relationship between the two judges and appellee, we feel that recusal of the two associate judges involved was required.

■ We make special mention of the fact that no party to this appeal has raised any specific accusation against either of the judges involved herein. Nor are we in any way suggesting that either judge acted in any but the most honorable way. However, to insure the public's continuing confidence in the fairness of our courts, we must be as vigilant regarding the appearance of this court as we are regarding its actual functioning. For the future, we note that, save special circumstances not here present,[8] there is a duty of recusal incumbent on an associate judge who finds himself or herself assigned to a case in which a governor who appointed the judge appears in his or her personal capacity.[9]

In summary, based on the clan issue dealt with above, as well as the issue of recusal discussed herein, we are obligated to remand this case for a new trial consistent with this opinion.

---

[6] The question of what may constitute these special circumstances is not now before this court, and we therefore decline to comment on it.

[7] Federal cases concluding that the governor-appointee relationship is too tenuous and remote to in and of itself justify recusal are not persuasive here, because the population of American Samoa is small and the citizens are generally well-known to each other.

[8] We particularly heed the Rule of Necessity-- when a case cannot be otherwise heard, even an interested judge has a duty to sit on that matter, *See United States v. Will*, 449 U.S. 200, 66 L.Ed.2d 392 (1980) (the Rule of Necessity is at least five and a half centuries old and has been recognized by many state and federal courts).

[9] Because of our decision on the points above, there is no need to reach appellants' other issues of contention. However, we do note that the trial court found candidate Lutali to have 1/128 hereditary right to the title. In *In re Matai Title "Faumuina"*, LT No. 1265-72 (1973), this court stated that hereditary claim is "far too remote to warrant serious consideration in the absence of special circumstances."

It is so ordered.