Lessie TILLMAN, Plaintiff,

v.

C.R. BARD, INC., etc., et al., Defendants.

No. 3:13–cv–222–J–34JBT.

United States District Court, M.D. Florida, Jacksonville Division.

Signed March 13, 2014.

---

Joseph R. Johnson, Babbitt, Johnson, Osborne & LeClainche, PA, West Palm Beach, FL, for Plaintiff.

Brandee J. Kowalzyk, Elizabeth C. Helm, Matthew B. Lerner, Richard B. North, Jr., Taylor Tapley Daly, Nelson, Mullins, Riley & Scarborough, LLP, Atlanta, GA, David E. Cannella, Carlton Fields Jorden Burt, PA, Orlando, FL, John A. Camp, Carlton Fields Jorden Burt, PA, Miami, FL, for Defendants.

### *ORDER*

JOEL B. TOOMEY, United States Magistrate Judge.

**THIS CAUSE** is before the Court upon the following:

1. Defendants' Motion for Protective Order Regarding Confidential Document Designations ("Motion for Protective Order") (Doc. 38) and Plaintiff's Amended Response thereto (Doc. 53); and

2. Defendants' Motion for Leave to Submit Documents for *In Camera* Inspection ("Motion for *In Camera* Review") (Doc. 37) and Plaintiff's Response thereto (Doc. 54).

For the reasons that follow, the Motion for Protective Order is due to be **GRANTED** and the Motion for *In Camera* Review is due to be **DENIED** as moot.

## I. Background

Plaintiff sues Defendants over the performance of their medical device, a G2 inferior vena cava filter. *(See* Doc. 1.) Defendants have filed the instant Motion for Protective Order to prevent Plaintiff from disclosing to the public and the U.S. Food and Drug Administration ("FDA") certain documents ("the Subject Documents") produced to Plaintiff in discovery pursuant to a Stipulation of Protection and Confidentiality ("Stipulation") (Doc. 38–3). Most of the documents have not been filed with the Court. The others that have been filed are under seal pursuant to prior Orders, and have been filed in connection with discovery motions. *(See, e.g.,* Doc. 33–1, 33–2.) Under the Stipulation, documents marked confidential stay confidential until the Court rules otherwise. (Doc. 38–3 at ¶ 2.) The Stipulation does not provide a standard for the Court to apply in its determination of confidentiality. (Doc. 38–3.) Therefore, Federal Rule of Civil Procedure 26(c)(1) will apply, as discussed below.

Defendants have moved to prevent Plaintiff from disclosing the Subject Documents on the grounds that they contain proprietary and trade secret information and that their disclosure would unfairly advantage Defendants' competitors. *(See* Doc. 38 at 2–3.) Defendants ask the Court to grant their Motion for Protective Order without inspecting the Subject Documents based upon an affidavit by Mr. Robert Carr, Senior Director of Research and Development employed by Defendant Bard Peripheral Vascular, Inc. (Doc.

38–4 at 1.) He attests that the information contained in the Subject Documents "required years for [Defendants] to develop" and that if the documents were disclosed it would give an "unfair economic advantage to [Defendants'] competitors." *(Id.* at 6.)

In the event the Court cannot grant their Motion for Protective Order on the basis of Mr. Carr's affidavit, Defendants alternatively move for the Court to inspect the Subject Documents *in camera.* (Doc. 37.) Plaintiff maintains that an *in camera* inspection is necessary "to permit meaningful appellate review." (Doc. 54 at 2.)

## II. Discussion

### A. It is unclear whether Plaintiffs have any right to disseminate the Subject Documents outside the litigation context, or to assert the public's or FDA's interests in disclosure.

Initially, the Court notes the procedural context of the Motion for Protective Order and Plaintiff's Response. There is no third-party, such as the press or the FDA, seeking to obtain the Subject Documents, as there was in most of the cases Plaintiff cites (specifically, *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304 (11th Cir.2001) and *In re Alexander Grant & Co. Litigation,* 820 F.2d 352 (11th Cir.1987)). Thus, Plaintiff is attempting to assert the rights of "the public and the FDA." (Doc. 53 at 2.) However, it is not clear that Plaintiff has a right to do so.

Moreover, to the extent Plaintiff is claiming that she has some right to use documents produced in discovery for purposes outside the litigation, it is not clear that such a right exists either. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 31, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) ("We therefore hold that where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment."). Even assuming some limited right to disseminate information obtained in discovery, the Supreme Court

has made clear that such right is subject to Rule 26(c)'s good cause standard.

**B. The public has no common-law right of access to discovery materials that have not been filed in connection with a substantive motion, and any constitutional right of access is identical to Rule 26(c).**

■ As noted, Plaintiff frames her argument in terms of the public's right of access to judicial proceedings. Specifically, she points out that there is a "presumption in favor of public access to court proceedings" and that the public and FDA have a health and safety interest in the Subject Documents. (Doc. 53 at 2.) However, this argument sweeps too broadly.

■ As the Eleventh Circuit stated in *Chicago Tribune Co.*:

Public disclosure of discovery material is subject to the discretion of the trial court and the federal rules that circumscribe that discretion. Where discovery materials are concerned, the constitutional right of access standard is identical to that of Rule 26(c) of the Federal Rules of Civil Procedure.

. . .

[W]hen applying the common-law right of access federal courts traditionally distinguish between those items which may properly be considered public or judicial records and those that may not; the media and public presumptively have access to the former, but not to the latter. An illustrative example is the treatment of discovery material, for which there is no common-law right of access, as these materials are neither public documents nor judicial records.

263 F.3d at 1310–11 (internal citations omitted).

■ A court may restrict distribution of discovery material even if there "certainly is a public interest in knowing more" about its contents. *See Seattle Times Co.*, 467 U.S. at 31, 104 S.Ct. 2199. Even in such cases, "[i]t does not necessarily follow . . . that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery." *Id.* The Supreme Court

has also recognized the potential for discovery abuse. *Id.* at 35 (characterizing disseminating information that "if publicly released could be damaging to reputation and privacy" as an "abuse of [a court's] processes").

Because no common law right of public access applies in this situation, and any constitutional right of access is identical to Rule 26(c), that rule, which allows the Court to place appropriate limitations on discovery for good cause, provides the relevant standard. "Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)." *Id.* at 34, 104 S.Ct. 2199.

**C. Federal Rule of Civil Procedure 26 permits the Court to issue a protective order that prevents the public disclosure of discovery information for "good cause."**

■ Federal Rule of Civil Procedure 26(c)(1) states:

The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place, for disclosure or discovery . . . [and] (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. . . .

*See also Chicago Tribune Co.*, 263 F.3d at 1313. Good cause "generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litigation*, 820 F.2d at 356. In the case of trade secrets, courts determine good cause by considering whether:

1) the party asserting the protection consistently treated the information as closely guarded secrets; 2) the information represented substantial value to that party; 3) the information would be valuable to the party's competitors; and 4) the information derived its value by virtue of the effort of its creation and lack of dissemination.

*In re Denture Cream Products Liability Litigation,* Case No. 09–2051–MD, 2013 WL 214672, at \*6 (S.D.Fla. Jan. 18, 2013) (citing *Chicago Tribune Co.,* 263 F.3d at 1313–14).

Additionally, in some circumstances, "[f]ederal courts have superimposed a balancing of interests approach for Rule 26's good cause requirement. This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential." *Chicago Tribune Co.,* 263 F.3d at 1313 (citing *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985)); *Denture Cream Products,* 2013 WL 214672, at \*10.

▓▓▓▓ District courts have broad discretion when fashioning protective orders, especially in cases involving complex litigation where reviewing each document would be impracticable. *In re Alexander Grant & Co. Litigation,* 820 F.2d at 356–57. This broad discretion is justified because appropriate protective measures "encourage maximum participation in the discovery process [and] conserve judicial resources." *Id.* at 357. When a court fashions a protective order, it may rely on declarations that accompany the motion. *See Denture Cream Products,* 2013 WL 214672, at \*8 (relying on statements in the movant's declaration when finding that documents contained trade secrets).

#### D. Analysis

▓▓ Good cause exists to issue a protective order that prevents Plaintiff from disclosing the Subject Documents to the FDA and the public. The Carr Affidavit, in conjunction with Defendants' log of confidential documents, attached to Defendants' Motion for Protective Order, identifies each of the subject documents and describes its confidential nature. (Doc. 38–2; Doc. 38–4 at 3–6.) The Carr Affidavit states the Subject Documents contain information that Defendants spent significant time and money developing, that the information is valuable and would be valuable to their competitors, and that Defendants have tried to keep the information confidential for these reasons. (Doc. 38–4 at 3–6.) Defendants have shown they have a significant interest in protecting the

Subject Documents. Furthermore, the Court agrees with Defendants that *in camera* review is unnecessary to make this finding because the Carr Affidavit is sufficient to establish good cause.

As observed above, this good cause determination does not necessarily end the inquiry. Federal courts have—at least in certain circumstances—superimposed a "balancing of interests" approach upon Rule 26's good cause analysis. *See Farnsworth,* 758 F.2d at 1547; *In re Alexander Grant & Co. Litigation,* 820 F.2d at 356. However, it is unclear whether such a balancing of interests would be appropriate in this case. Plaintiff encourages the Court to balance "the owner's interest in maintaining the confidentiality of information, versus the interest in disclosure." (Doc. 53 at 4.) However, there is no third party before the Court asserting "the interest in disclosure." As a practical matter, it is difficult to engage in such a balancing when there is no knowledgeable entity, such as the FDA, to explain the importance to the public of each document, particularly in light of information already in the public domain, other avenues to obtain the information, and other relevant considerations.

Nevertheless, even if the Court were to undertake the proposed balancing analysis, the result still favors Defendants. A court in the Southern District of Florida considered a situation similar to the instant case in *In re Denture Cream Products Liability Litigation,* Case No. 09–2051–MD, 2013 WL 214672 (S.D.Fla. Jan. 18, 2013). The plaintiffs in that case alleged that the defendants' denture cream caused its users neurological problems. *Id.,* at \*1. Plaintiffs moved to unseal two expert reports and related documents obtained through discovery so that they could disclose them to the FDA. *Id.* In doing so, the plaintiffs argued that the public's potential health and safety concerns "outweigh the need for confidentiality in this context and favor unsealing the documents for the limited purpose of disclosure to the FDA." *Id.,* at \*2.

The *Denture Cream Products* court rejected this argument. After finding that good cause existed to prevent disclosure of the relevant discovery and expert reports to the

FDA under Rule 26, the court applied a balancing test. It held:

> [T]he undersigned concludes that the fact that [Defendants] produced the confidential documents, at least in part, based upon [their] reliance upon the agreed to Confidentiality Order, weighs in favor of keeping those documents sealed. Also, as previously mentioned, the documents at issue have not been placed in the "public arena of courtroom proceedings" by [Defendants] in this case. In addition, it is important to emphasize the fact that there is no indication or assertion that the FDA has requested the disputed documents, or even the Plaintiffs' expert reports, to be produced; ... and [the FDA] has not sought to participate in this matter to assert an interest in obtaining the documents at issue here. Indeed, there has been no assertion that the FDA is incapable of seeking the production of the documents at issue through the use of its subpoena powers, if necessary....

*Id.*, at *10.

Here, too, Defendants produced the Subject Documents in reliance on a similar confidentiality stipulation.[1] Likewise, the documents have not been placed in the "public arena of courtroom proceedings." *See id.* Finally, there is no evidence in the record that the FDA has expressed any interest in obtaining the Subject Documents, even though Plaintiff is free to share her allegations with the FDA. Thus, even assuming a balancing of interests is appropriate in this case, such a balancing favors Defendants.

Accordingly, it is **ORDERED:**

1. Defendants' Motion for Protective Order (**Doc.** 38) is **GRANTED.** Plaintiff shall treat the Subject Documents as confidential information pursuant to the parties' Stipulation of Protection and Confidentiality (**Doc.** 38–3).

2. Defendants' Motion for *In Camera* Review (**Doc.** 37) is **DENIED as moot.**

---

1. In this case, the Court did not enter the parties' Stipulation as its own order. However, the Court does not consider this distinction significant. "The [Federal Rules of Civil Procedure] specifically authorize the use of agreements between counsel to govern the conduct of discovery." *Pescia v. Auburn Ford–Lincoln Mercury, Inc.*, 177 F.R.D. 509, 510 (M.D.Ala.1997); *see also* Fed.R.Civ.P. 29(b). "[L]itigants ordinarily are not required to obtain the court's approval of these stipulations." Fed.R.Civ.P. 29, Advisory Committee Note, 1993 Amendments.